## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HARRISON DIVISION

**ZETOR NORTH AMERICA, INC.**                                            **PLAINTIFF**

**V.**                         **CASE NO. 3:15-CV-03035**

**BRENT ROZEBOOM, individually and d/b/a**
**Ridgeway Enterprises, and as director**
**of Alberni Enterprises;**
**GLENDA ROZEBOOM, individually and d/b/a**
**Ridgeway Enterprises;**
**RIDGEWAY ENTERPRISES, a private trust company;**
**ALAN SCOTT PETERSON, individually**
**and as Executive Trustee of Ridgeway Enterprises;**
**ANTONIE (a.k.a. Tony) ROZEBOOM;**
**and ALBERNI ENTERPRISES, a private trust company**          **DEFENDANTS**

## OPINION AND ORDER

Now pending before the Court are two related motions that are ripe for decision. The first is a Motion to Compel Arbitration (Doc. 28) that was filed on January 29, 2016, by Defendants Brent and Glenda Rozebooom ("the Rozebooms"), and is supported by a Brief in Support (Doc. 29) and exhibits.  Plaintiff Zetor North America, Inc. ("Zetor") filed a Response in Opposition to the Motion (Doc. 46), and the Rozebooms filed a Reply (Doc. 50).  On February 29, 2016, Defendants Alan Scott Peterson and Ridgeway Enterprises ("Ridgeway") filed a Motion (Doc. 60) seeking to join in and incorporate by reference all the arguments in favor of arbitration that the Rozebooms set forth in their Motion to Compel. No brief or additional exhibits were submitted in support of Peterson's and Ridgeway's Motion, and Zetor's Response in Opposition to the Motion (Doc. 62) argued that neither Peterson nor Ridgeway had standing to join in the Rozebooms' Motion.

On March 17, 2016, the Court held a hearing on the Motions and entertained oral argument from counsel.  After oral argument concluded, the Court stated from the bench that it was inclined to deny both Motions, but desired to conduct more research and investigate some of the case citations suggested by counsel before making a final decision. Now that the Court has fully investigated these arguments, both Motions are **DENIED**.  To the extent anything in this Order differs from the findings announced from the bench, the Order will control.

## I.  BACKGROUND

Zetor is a Florida corporation that was granted a license by Zetor Tractors a.s.—the exclusive licensee of the Zetor trademark—to use both the Zetor mark and promotional materials for Zetor Tractors in the United States.  According to the Amended Complaint, Zetor is a brand recognized around the world for making quality tractors.  More than a million Zetor tractors are in use in almost 100 countries in the world, and most of the components of Zetor tractors are manufactured at the company's main plant in Brno, Czech Republic.

The Amended Complaint alleges that Ridgeway is not an authorized dealer of Zetor products and is not licensed to use the Zetor mark.  According to Zetor, Ridgeway has advertised, marketed, sold, and distributed new and used goods using the Zetor mark, without clearly distinguishing which parts are genuine Zetor parts, and which are manufactured by other entities.  As a result, Zetor contends that Ridgeway's advertising, marketing, and sale of goods using the Zetor brand name is confusing to the consumer as to the source of the goods and quality of the product, as such marketing and sales

techniques dilute and tarnish the reputation and good will associated with the Zetor mark. In addition, Zetor maintains that Ridgeway's use of photos and other promotional materials featuring Zetor tractors is illegal and amounts to copyright infringement. The causes of action alleged in the Amended Complaint are for trademark infringement and dilution, injury to business reputation, unfair competition, copyright infringement, deceptive trade practices, and civil conspiracy arising under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; the anti-dilution laws of the State of Arkansas, Ark. Code Ann. § 4-71-213; the Arkansas Deceptive Trade Practice Act, Ark. Code Ann. § 4-88-101, *et seq.*; the Copyright Act of 1976 as amended, 17 U.S.C. §§ 101, *et seq.*; and the common law.

Zetor initially sued only Brent and Glenda Rozeboom, in their capacities as owners of Ridgeway Enterprises. *See* Doc. 1. However, once the parties completed preliminary discovery, Zetor filed an Amended Complaint (Doc. 21) that expanded the list of Defendants to include various parties Zetor maintained also had an interest in Ridgeway, which is described in the pleadings as a "private trust company."[1] Aside from the Rozebooms, other Defendants are: (1) Antonie Rozeboom ("Tony"), who is the father of Brent Rozeboom and allegedly owns the building and property that houses Ridgeway's operations; (2) Alberni Enterprises, another so-called private trust company associated with the Rozebooms; and (3) Alan Scott Peterson, who describes himself as the Executive Trustee of Ridgeway Enterprises.

---

[1] The Court discussed with counsel at the hearing that it had never heard of a business entity called a private trust company and suspected that it was not a legally valid business organization. Counsel for Defendants were similarly at a loss to explain to the Court exactly what a private trust company was.

3

It turns out that in 2008, Zetor, the Rozebooms, and Ridgeway were involved in a dispute similar to the one in the case at bar.  At that time, the parties' dispute was resolved via a Settlement Agreement ("Agreement"), which contained an arbitration clause, and was signed in 2009 by the president and secretary of Zetor, as well as the Rozebooms, in their individual capacities and as managers of Ridgeway.  *See* Doc. 28-2.  Despite having been signed in 2009, the effective date of the Agreement was October 15, 2008, and it included the following provisions:

(1) Ridgeway acknowledged the validity of the Zetor mark and understood that only Zetor and its authorized resellers and licensees may use the mark in advertising, promotional, and sales materials.  *Id.* at p. 1.

(2) Ridgeway agreed to permanently cease and desist the use of the Zetor mark except in certain enumerated circumstances.  *Id.* at p. 2.

(3) Zetor released, waived, and forever discharged the Rozebooms, Ridgeway, and Ridgeway's officers, directors, beneficiaries, and successors in interest, from any and all past claims "arising from the acts described in or the claims asserted in Exhibit A [a cease-and-desist letter, Doc. 28-1] that occurred prior to the effective date of this Agreement." *Id.*

(4) The parties agreed to attempt to resolve in good faith any controversy "arising out of or relating to this Agreement" by engaging in mediation followed by binding arbitration.  *Id.* at p. 3.

Turning now to the two Motions to Compel Arbitration, taken collectively, it appears the Rozebooms, Ridgeway, and Peterson now argue that the majority of the claims at issue in the instant lawsuit arise out of or relate to the Agreement that was signed in 2009, and thus are subject to binding arbitration.  Zetor opposes arbitration and makes the

4

following three arguments in opposition: (1) the arbitration clause of the Agreement is not at issue in this case, as the Agreement concerned claims made prior to 2009, and the instant lawsuit does not involve these older claims, nor does the lawsuit concern an allegation that Ridgeway breached the Agreement; (2) the arbitration clause, if valid, does not bind the parties to arbitrate future alleged violations of law by Ridgeway—no matter how similar the current allegations are to the ones made in 2008 that were resolved by the Agreement; and (3) the arbitration clause should be declared void due to fraudulent inducement in its formation, as at the time the Agreement was executed, Zetor was under the impression that Ridgeway was solely owned by the Rozebooms, and now it appears that the Rozebooms lacked the authority to bind Ridgeway to the Agreement in the first place.  Below the Court will analyze the arbitration clause at issue here, and then consider each of Zetor's three arguments as to why the arbitration clause should not be enforced in the case at bar.

## II.  LEGAL STANDARD

The parties agree that the Federal Arbitration Act ("FAA") governs the arbitration clause in the 2009 Agreement.   The FAA reflects a "liberal federal policy favoring arbitration."  *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011).  However, the general rule is that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Howsam v. Dean Witter Reynolds*, *Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) (internal marks omitted)).  Further, whether the parties agreed to arbitrate an issue is a question for the court, and not the arbitrator, to decide.  *AT&T Tech., Inc. v. Commc'ns*

*Workers*, 475 U.S. 643, 649–50 (1986).  "But 'when deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'"  *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007) (quoting *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Here, the Court acknowledges a possible dispute as to whether Arkansas or Georgia law governs the Agreement, even though neither party raised a choice-of-law argument in the briefing.  Regardless of which state law would apply, however, both Arkansas and Georgia recognize that the initial determination regarding the existence of an ambiguity in a contract is a decision for the court, and *only if the contract is found to be ambiguous* will a question of fact arise as to the parties' intent.  *See Keller v. Safeco Ins. Co.*, 317 Ark. 308, 312 (1994); *Simpson v. Pendergast*, 290 Ga.App. 293, 296 (Ga. Ct. App. 2008).  When a contract is found to be unambiguous, the court should simply enforce it according to its terms, applying common-law rules of construction.  *Id.*

### III. DISCUSSION

Zetor contends that in 2009, when the Agreement between it and the Rozebooms was signed, the Rozebooms held Ridgeway out to be a small, family-owned business in their sole ownership and control.  The Agreement reveals that the Rozebooms signed "[f]or and on behalf of Ridgeway Enterprises," and thus held themselves out as having the authority to bind Ridgeway to the Agreement's contractual terms.  (Doc. 28-2, p. 6).  The Rozebooms and Zetor agree that the Agreement came about as a result of a cease-and-desist letter sent by Zetor's counsel to Ridgeway on September 10, 2008 (Doc. 28-1), and that many of the same allegations of wrongdoing that are asserted in the case at

bar—including Ridgeway's unauthorized use of the Zetor mark, its advertising and selling of Zetor tractor parts, its engagement in unfair competition due to "passing off" counterfeit tractor parts as genuine Zetor parts, and its creation of consumer confusion as to the origin of the parts—were also the subject of the 2008 cease-and-desist letter.  *Id.* at p. 2.

The Court finds, however, that the 2009 Agreement is immaterial to the new claims asserted in the instant lawsuit.  This case does not involve an alleged breach of the Agreement, and no breach of contract claim is asserted.  Instead, Zetor's lawsuit, filed on June 1, 2015, alleges that Ridgeway committed new violations of federal copyright and trademark laws, as well as engaged in unfair competition, deceptive trade practices, and civil conspiracy.  These allegations must have accrued *after* the Agreement was signed, as the relevant statutes of limitation for all claims reach back, at most, to June 1, 2010.[2] This is so because the Arkansas Deceptive Trade Practices Act carries a five-year statute of limitations, *see* Ark. Code Ann. § 4-68-115; the Copyright Act carries a three-year statute of limitations, *see* 17 U.S.C. § 507(b); and the Lanham Act contains no statute of limitations but instead takes on the most analogous limitations period pursuant to state law.

Based on the above reasoning, it does not appear to the Court that the arbitration clause in the Agreement could reasonably apply to claims that accrued 18 months after the effective date of that Agreement.  The only way the arbitration clause would be applicable now is if the plain language of the Agreement indicated that the parties intended to be bound to arbitrate future disputes between them as to violations of trademark, copyright, and consumer-deception law, and that this restriction would carry onward into perpetuity.

---

[2]  Counsel for Zetor confirmed this fact at the hearing.

Such a reading of the Agreement and arbitration clause is patently unreasonable and contrary to the clear and unambiguous language of the contract itself.  Moreover, no consideration exists to support such a substantial concession of the right to pursue relief in court and seek trial by jury—by either party—and this fact alone provides a secure basis for the Court's decision.  Clearly, no forward-looking agreement to arbitrate all future disputes concerning new violations of law was ever contemplated by the parties.  The Agreement resolved the disputes that were at issue at the time it was signed.

In particular, the Agreement, by its unambiguous terms, provides that the parties mutually released one another as to any and all liability with respect to "the claims asserted in Exhibit A [the 2008 cease-and-desist letter] that occurred *prior to the effective date of this Agreement*."  (Doc. 28-2, p. 2) (emphasis added).  Further, the Preamble to the Agreement states explicitly that the Agreement was created because "the Parties wish[ed] to settle their disputes," and those disputes included only "Zetor['s] . . . claims and demands of Rideway [sic] related to, *inter alia*, trademark infringement *in a letter dated September 10, 2008* (Exhibit A) [the 2008 cease-and-desist letter]."  *Id.* at p. 1 (emphasis added).

The specific arbitration clause in the Agreement also makes clear that it covers "disputes *under this Agreement*," *id.* at p. 3 (emphasis added), meaning those described in the cease-and-desist letter, as contemplated by the parties in both the Preamble and Release sections.  The arbitration clause is inapplicable to the new claims made in the instant dispute.

Because the above reasoning sets forth a sufficient basis for denying both of the Motions to Compel Arbitration, there is no need for the Court to reach Zetor's alternative

argument, which is that the arbitration clause of the Agreement should be declared void due to fraudulent inducement in its formation.  The Court declines to make formal findings as to this argument by Zetor.

### IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that the Rozebooms' Motion to Compel Arbitration (Doc. 28) and Peterson's and Ridgeway's Motion to Compel Arbitration (Doc. 60) are both **DENIED**.

**IT IS FURTHER ORDERED** that the Motion to Strike the Affidavit of Brent Rozeboom (Doc. 87) and Motion to Strike the Affidavit of Alan S. Peterson (Doc. 89) are **GRANTED**, and the Clerk of Court is **DIRECTED TO STRIKE** these documents from the record.  The Court did not rely on either affidavit in interpreting the meaning of the Agreement as a matter of law, as the Agreement was unambiguous and no parol evidence was necessary to understand the Agreement's terms.  In addition, the Court found the affidavits both self-serving and untimely submitted.

**IT IS FURTHER ORDERED** that the Motions to Stay Discovery (Docs. 90, 93) are **DENIED AS MOOT**.

**IT IS SO ORDERED** on this 22nd day of April, 2016.


/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE