## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HARRISON DIVISION

**ZETOR NORTH AMERICA, INC.**                                    **PLAINTIFF**

**V.**                                    **CASE NO. 3:15-CV-03035**

**BRENT ROZEBOOM, individually and d/b/a**
**Ridgeway Enterprises, and as director**
**of Alberni Enterprises;**
**GLENDA ROZEBOOM, individually and d/b/a**
**Ridgeway Enterprises;**
**RIDGEWAY ENTERPRISES, a private trust company;**
**ALAN SCOTT PETERSON, individually**
**and as Executive Trustee of Ridgeway Enterprises;**
**ANTONIE (a.k.a. Tony) ROZEBOOM;**
**and ALBERNI ENTERPRISES, a private trust company**          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are the following Motions:

- Motion for Partial Summary Judgment (Doc. 154), Brief in Support (Doc. 155), and Statement of Facts (Doc. 156) by Plaintiff Zetor North America, Inc. ("Zetor NA"); Response in Opposition (Doc. 162) and Statement of Facts (Doc. 163) by Defendants Brent Rozeboom, Glenda Rozeboom, Alan Scott Peterson, and Ridgeway Enterprises (collectively, "the Ridgeway Defendants"); and Reply (Doc. 171) by Zetor NA;

- Motion to Dismiss Counts III, IV, and VII (Doc. 169) by Zetor NA;

- Motion for Summary Judgment (Doc. 157), Brief in Support (Doc. 158), and Statement of Facts (Doc. 159) by the Ridgeway Defendants; Response in Opposition (Docs. 176, 177) and Statement of Facts (Doc. 178) by Zetor NA; and Reply (Doc. 185) by the Ridgeway Defendants; and

- Motion in Limine to Exclude Expert Testimony (Doc. 164) and Brief in Support (Doc. 165) by the Ridgeway Defendants, and Response in Opposition (Docs. 179, 180) by Zetor NA.

The Court will begin by reviewing the factual and procedural history of the case and explaining the legal standard pertinent when evaluating motions for summary judgment. Then the Court will consider Zetor NA's Motion for Partial Summary

Judgment as to Count II of the Ridgeway Defendants' Counterclaim, followed by Zetor NA's Motion to Dismiss Counts III, IV, and VII of its Amended Complaint. Finally, the Court will take up the Ridgeway Defendants' Motion for Summary Judgment as to all remaining claims in the Amended Complaint, along with Defendants' Motion in Limine to exclude the testimony of Zetor NA's expert witnesses, Dr. Steven Kopp and Mr. Dennis Sisson. For the reasons explained below, Zetor NA's Motion for Partial Summary Judgment and Motion to Dismiss are both **GRANTED**, the Ridgeway Defendants' Motion for Summary Judgment is **DENIED IN PART AND MOOT IN PART**, and the Ridgeway Defendants' Motion in Limine is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Zetor NA filed this case on June 1, 2015, alleging that Brent and Glenda Rozeboom, d/b/a Ridgeway Enterprises ("Ridgeway"), engaged in trademark infringement and dilution, injury to Zetor NA's business reputation, unfair competition, and deceptive trade practices arising under the Lanham Act and the Arkansas Deceptive Trade Practices Act. *See* Doc. 1. After the parties engaged in some discovery, Zetor NA sought and received leave to file an Amended Complaint (Doc. 21) on January 4, 2016.

According to the Amended Complaint, the Rozebooms, joined by Defendants Alan Scott Peterson, who is identified as the Executive Trustee of Ridgeway, and Antonie (aka Tony) Rozeboom, who is named as an owner/operator of Ridgeway, conspired together "to facilitate the infringing and deceptive acts or omissions of

Ridgeway," *id.* at 3, along with separate Defendant Alberni Enterprises, which is described as a "private trust company," *id.* at 4. Specifically, Ridgeway is accused of advertising, marketing, selling, and distributing new and used tractor parts using the Zetor mark. The Zetor tractor mark is owned by HTC Holding a.s. ("HTC"), which is a Czechoslovakian company that has granted an exclusive license to use the Zetor mark to its wholly-owned subsidiary, another Czech company called Zetor Tractors a.s. ("Zetor Tractors"). Plaintiff Zetor NA is described in the Amended Complaint as "a Florida Corporation . . . . [that] has been granted a license to use the Zetor trademark and Zetor Tractors promotional materials in the United States . . . ." *Id.*

Since the Ridgeway Defendants are not authorized dealers of Zetor products, Zetor NA believes that Ridgeway's advertising and sale of Zetor tractor parts, through Ridgeway's website and other means, tend to create and have created confusion in consumers as to the source of these tractor parts. According to Zetor NA, Ridgeway fails to clearly distinguish in its advertising which tractor parts it sells that are genuine Zetor parts, and which are manufactured by other entities. In addition, Zetor NA accuses Ridgeway of using the Zetor mark in promotional materials without permission and in a manner that is confusing to consumers. Counts I, II, and III are claims arising under the Lanham Act. Count I is for trademark infringement, Count II is for federal unfair competition, and Count III is for dilution of a trademark's value. Count IV arises under Arkansas law governing trademark, Ark. Code Ann. § 4-71-213, and states a cause of action for trademark dilution and injury to business reputation. Count V is a common-law cause of action for trademark infringement and unfair competition. Count

3

VI alleges a violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"), with respect to Ridgeway's "false and misleading representations with the intent to confuse purchasers and potential purchasers . . . ." *Id.* at 14. Count VII is a claim for copyright infringement as to certain photographic works created and published in the Czech Republic and allegedly used in promotional materials by Ridgeway. Finally, Count VIII is a claim for civil conspiracy to infringe trademark rights, asserted by Zetor NA against all Defendants.

On January 29, 2016, less than a month after Zetor NA filed its Amended Complaint, separate Defendants Brent and Glenda Rozeboom moved to compel arbitration, citing the Court to a settlement agreement they entered into with Zetor NA, Zetor Tractors, and HTC on behalf of themselves and Ridgeway in 2009. This settlement agreement resolved a previous, similar dispute between the Rozebooms/Ridgeway and all three related Zetor companies concerning Ridgeway's use of the Zetor mark in its advertising materials. *See* Doc. 28-2. On February 29, 2016, separate Defendants Alan Scott Peterson and Ridgeway filed a similar motion to compel arbitration. After the arbitration issue was fully briefed, the Court held a hearing on March 17, 2016, to allow the parties to present oral argument. On April 22, 2016, the Court issued an Opinion and Order (Doc. 96) denying the motions to compel arbitration, and finding that the arbitration clause in the 2009 settlement agreement did not apply to any of the claims raised in the instant lawsuit.

Shortly thereafter, Defendants filed an interlocutory appeal of the Court's order denying arbitration, and the Court's decision was affirmed by the Eighth Circuit in an

opinion filed on July 3, 2017. *See* Doc. 111-1. The formal mandate issued on September 11, 2017, (Doc. 111), and the Court reset the matter for a jury trial. *See* Doc. 116. Then the Ridgeway Defendants filed a three-Count Counterclaim (Doc. 137) on December 11, 2017. After the parties finished taking discovery, they filed the dispositive motions and the motion in limine that are now before the Court for resolution.

Zetor NA's Motion for Partial Summary Judgment seeks to dismiss Count II of the Ridgeway Defendants' counterclaim for breach of contract. Zetor NA contends that the 2009 settlement agreement did not create a forward-looking contractual relationship between the parties, including granting a license to Ridgeway to use the Zetor mark in a particular manner—other than the legal ways trademarks may ordinarily be used under the "fair use" doctrine, absent a license. Further, Zetor NA argues that it could not have breached the settlement agreement merely by filing the instant lawsuit.

Next, Zetor NA moves to voluntarily dismiss Counts III, IV, and VII of its Amended Complaint. The Ridgeway Defendants do not oppose the Motion and have also moved for summary judgment as to all remaining claims in the Amended Complaint. Assuming Counts III, IV, and VII are voluntarily dismissed, this leaves Counts I, II, V, VI and VIII for substantive review on summary judgment.

Beginning with the trademark-related claims arising from either federal trademark law or the common law, as stated in Counts I, II, and V, the Ridgeway Defendants contend that: (1) Zetor NA lacks standing to bring such claims because it does not own the trademark in question and has not acquired rights to sue on behalf of the owner of the mark (HTC) for infringement or unfair competition, and (2) the Ridgeway

Defendants' use of the mark is not likely to cause consumer confusion or damage. Related to the second argument is the Ridgeway Defendants' Motion in Limine, which argues among other things that the Court should exclude Zetor NA's expert witness testimony and consumer survey concerning the likelihood of confusion that could result from the Ridgeway Defendants' use of the Zetor mark.

As for Count VI of the Amended Complaint, which asserts violations of the ADTPA, the Ridgeway Defendants argue the claim must be dismissed because there is no proof that Zetor NA suffered "actual financial loss," as defined by the statute, since Zetor NA is not a consumer of Ridgeway goods and therefore has not been damaged in the manner that the statute contemplates.

Finally, as to Count VIII for civil conspiracy, the Ridgeway Defendants argue that nothing more than threadbare allegations have been asserted to support the claim, and there is no evidence that the Defendants conspired together to commit any underlying tort.

## II. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material

fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).

## III. DISCUSSION

### A. Zetor NA's Motion for Partial Summary Judgment on Count II of the Counterclaim

The Ridgeway Defendants' Counterclaim at Count II alleges that when Zetor NA filed the instant lawsuit, it breached the parties' 2009 settlement agreement. The Ridgeway Defendants contend that the instant suit "seek[s] damages for conduct specifically permitted under the terms of the Agreement," which "granted Ridgeway a license to make use of the Zetor name as specifically set forth therein." (Doc. 137, p. 5). The argument goes that because Zetor NA sued Ridgeway for using the mark in the manner the parties agreed was acceptable under the terms of their 2009 settlement agreement, Zetor NA constructively breached the settlement agreement and damaged the Ridgeway Defendants in the form of decreased sales, loss of good will, and damage to Ridgeway's business reputation.

Zetor NA's position in its Motion for Partial Summary Judgment is that the 2009 settlement agreement did not grant Ridgeway a license to use the Zetor name and mark. Instead, the settlement agreement merely listed—for purposes of clarity—many

7

of the ways in which Ridgeway could legally use the Zetor mark without having to secure a license and without violating federal or state trademark law.

In the settlement agreement, Ridgeway agreed that it would "permanently cease and desist the use of the ZETOR Mark." (Doc. 137-1, p. 3). In particular, Ridgeway agreed not to not use the mark "or other indicator of source that is confusingly similar to the Zetor mark," and also consented to stop "promoting and advertising that Ridgeway sells 'Zetor original equipment manufacturer parts' or 'Zetor OEM parts' or similar phrases." *Id.* The *only* instance when Ridgeway was permitted to use the Zetor mark was in "promotional/advertising materials (printed or otherwise) to describe that a Ridgeway product is compatible with a referenced Zetor product or technology." However, when using the mark for this purpose, Ridgeway was required to make certain that:

a.  The Zetor word mark is not part of the advertised product name.
b.  The Zetor word mark is used in a descriptive phrase such as "fits," "for use with," "for," or "compatible with."
c.  The Zetor word mark appears less prominent than the product name.
d.  The product is in fact compatible with, or otherwise works with, the referenced Zetor product.
e.  The reference to Zetor does not create a sense of endorsement, sponsorship, or false association with Zetor or Zetor products or services.
f.  The use does not show Zetor or its products in a false or derogatory light.

*Id.*

Zetor NA argues that the settlement agreement did not create a license for Ridgeway to use the mark, as Count II of the Counterclaim alleges. Instead, the settlement agreement merely outlined for Ridgeway's benefit an acceptable set of uses

of the mark that would not violate federal or state trademark law. According to Zetor NA's analysis, *anyone* could use its mark in the ways described in the settlement agreement and not run afoul of the law, since such uses would comport with the "fair use doctrine," which the law has exempted from trademark enforcement. Zetor contends that, since the settlement agreement conferred no special rights or privileges on Ridgeway to use the mark, the agreement could not possibly have been breached, as a matter of law, by Zetor NA's decision to sue Ridgeway for *illegally* using the mark.

The Court agrees that the Ridgeway Defendants cannot make out a cognizable breach of contract action based on Zetor NA's decision to sue for infringement in this case. Although the Ridgeway Defendants argue that their usage of the Zetor mark does, in fact, conform to the usage restrictions spelled out in the settlement agreement or otherwise qualifies as fair use, this argument is simply an affirmative defense to the claims in the Amended Complaint. The Amended Complaint itself does not allege that Defendants used the Zetor mark according to the terms of the settlement agreement. Instead, it alleges a use that was contrary to the terms of the settlement, in that it maintains: "Ridgeway's advertising, marketing and sale of goods using the Zetor name is confusing to the consumer as to the source of the goods and the quality of the product, and dilutes and tarnishes the reputation and good will of the Zetor name." (Doc. 21, p. 7). All causes of action asserted in the Amended Complaint flow from Zetor NA's contention that Defendants' illegal use of the mark. Therefore, as a matter of law, Zetor NA's decision to file this lawsuit alleging such illegal use could not possibly have breached the parties' settlement agreement. Zetor NA's Motion for Partial Summary

9

Judgment is **GRANTED**, and Count II of the Counterclaim for breach of contract is **DISMISSED WITH PREJUDICE**.

### B. Zetor NA's Motion to Dismiss Counts III, IV, and VII

Zetor NA moves to voluntarily dismiss Counts III, IV, and VII of the Amended Complaint, without prejudice. The Ridgeway Defendants did not file any opposition to the Motion. Therefore, the Motion to Dismiss (Doc. 169) is **GRANTED**, and Counts III, IV, and VII are **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 41(a)(2).

### C. Ridgeway Defendants' Motion for Summary Judgment and Motion in Limine

#### 1. Motion for Summary Judgment

The Ridgeway Defendants' Motion for Summary Judgment seeks dismissal of all Counts in the Amended Complaint. Now that Counts III, IV, and VII have been dismissed, this leaves only Counts I, II, V, VI, and VIII.

##### a. Count I—Lanham Act Violation for Trademark Infringement

Count I pleads federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114. To prove infringement, there must be evidence of a use of the mark in commerce, without the owner's consent, in a manner that is likely to cause confusion. 15 U.S.C. § 1114(1); *B & B Hardware, Inc. v. Hargis Indus.*, 569 F.3d 383, 389 (8th Cir. 2009). The parties here do not dispute that the Zetor mark was used in commerce. The only issues to consider on this claim are those of standing and likelihood of consumer confusion.

## i. Standing

The Lanham Act requires that the "registrant" of the trademark bring suit for infringement. 15 U.S.C. § 1114(1). The Act more broadly defines a "registrant" to include "the legal representatives, predecessors, successors and assigns of such applicant or registrant." 15 U.S.C. § 1127. Courts have interpreted the Act to mean that only the following entities or individuals have standing to bring suit to bring a trademark infringement action: (1) the owner of the mark, (2) the person or entity to whom the owner of the mark has completely assigned all rights to the mark, or (3) the exclusive licensee of the mark who has either been granted the explicit contractual right to enforce the mark and sue on the owner's behalf, or else is not restricted by virtue of any term in the license from fully enforcing the mark in the owner's place.[1] See Calvin Klein Jeanswear Co. v. Tunnel Trading, 2001 WL 1456577, at *4 (S.D.N.Y. Nov. 16, 2001) ("Where a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark under § 1114." (citing cases));

---

[1] Some courts have refused to acknowledge that an exclusive licensee would have standing to sue for infringement at all unless its license were "truly exclusive," meaning that it excluded even the licensor from using the mark and, thus, was more analogous to a complete assignment of all rights in the mark. See, e.g., Quabaug Rubber Co. v. Fabian Shoe Co., 567 F.2d 154, 159 (1st Cir. 1977) (defining an "exclusive licensee" as a distributor or seller of trademarked goods "who had a right by agreement with the owner of the trademark to exclude even him from selling in their territory"); ICEE Dists., Inc. v J and J Snack Foods Corp., 325 F.3d 586, 598 (5th Cir. 2003) (explaining that "[i]t would be antithetical to the basic principles of trademark law to extend to a licensee the rights of an assignee without caution, since deeming a licensee an assignee would allow the assignee to hold the registered trademark owner liable under trademark law, rather than simply under contract law, for diluting the mark by utilizing a similar trademark in the assignee's area").

*Ultrapure Sys., Inc. v. HAM–LET Grp.*, 921 F.Supp. 659, 665–66 (N.D. Cal. 1996) ("[T]he licensee lacks standing when provisions in the contract indicate that the licensor retains exclusive ownership of the mark."); *Etri, Inc. v. Nippon Miniature Bearing Corp.*,1989 WL 99575, at *3 (N.D. Ill. Aug. 18, 1989) (finding that an exclusive licensing agreement conferred standing on the licensee to sue for infringement of a trademark because it specifically granted the licensee "the right to enforce any rights under the Agreement, including but not limited to litigation" (internal quotation marks omitted)).

Here, the Ridgeway Defendants argue that Zetor NA is neither the owner of the mark nor the exclusive licensee, and the distribution agreement between Zetor Tractors and Zetor NA did not grant Zetor NA the explicit right to sue to enforce HTC's trademark rights. Defendants further argue that the licensing agreement between HTC and Zetor Tractors—which is more along the lines of an exclusive license to use the mark, as it does not contain any geographical limitations—nonetheless does not contain any language that grants Zetor Tractors the explicit right to sue on HTC's behalf. After careful consideration of these issues, the Court finds that Defendants are correct.

Before delving more fully into the question of Zetor NA's standing, the Court must point out the fact that it is most unfortunate that the issue was never raised in the nearly three years this lawsuit has been pending—including when the case was brought before the Eighth Circuit on interlocutory appeal. The parties have been familiar with one another since at least 2008, when Zetor Tractors' legal counsel wrote a letter to Ridgeway, accusing the company, through its principals, of infringing Zetor's licensed mark. *See* Doc. 28-1. The threat of litigation in 2008 culminated in a settlement

agreement signed in 2009 by representatives of *all three* Zetor companies—HTC, Zetor Tractors, and Zetor NA—as well as Brent Rozeboom, on behalf of Ridgeway, and Brent and Glenda Rozeboom in their individual capacities. *See* Doc. 28-1.

Up until the present, the Defendants have not suggested to the Court that Zetor NA is the wrong entity to bring this lawsuit for trademark infringement, or that another member of the Zetor family of companies should be joined as an indispensable party. The first inkling the Court was given about the possible standing problem was on June 1, 2018, through the Ridgeway Defendants' Motion for Summary Judgment (Doc. 157). At the time the Motion was filed, the trial of this matter was scheduled to commence less than two months later, on July 23, 2018.

With that background out of the way, the Court notes that even a cursory review of the licensing and distribution agreements entered into by HTC, Zetor Tractors, and Zetor NA—and submitted to the Court for the first time by the Ridgeway Defendants along with their Motion for Summary Judgment—should have raised a red flag in the parties' minds that the issue of standing was a potential problem. These agreements, when read together, set forth the nature of the three Zetor companies' business relationship and their collective interest in the Zetor mark. Since these agreements unambiguously show that Zetor NA is not the registrant of the Zetor trademark or the registrant's assignee or legal representative, Zetor NA's right to sue for infringement is certainly not obvious, and if such a right exists at all, it entirely "depends on the language of [the] license agreement with [the mark's owner]." *See Fin. Inv. Co. v. Geberit AG*, 165 F.3d 526, 532 (7th Cir. 1998).

## (1). Zetor Tractors' Rights in the Trademark

HTC is the registrant of the U.S. trademark for "ZETOR." HTC licensed its U.S. mark to its wholly-owned subsidiary, Zetor Tractors, and Zetor Tractors, in turn, sub-licensed the mark to its wholly-owned subsidiary and distributor in North America, Zetor N.A. In analyzing the scope of Zetor Tractors' rights with respect to the trademark, the Court has reviewed Document 158-1 in the record, which is titled "Amendment 9 to the Trademark License Agreement" ("Licensing Agreement"). This Licensing Agreement identifies HTC as the "Licensor" and Zetor Tractors as the "Licensee," and in Section I.2 "gives the Licensee [Zetor Tractors] a *non-exclusive* right to use the trademark mentioned in Article I.1 of the Agreement" in all territories in which the mark is registered. *Id.* at 3 (emphasis added). Lest the reader question whether the label "non-exclusive" is just that—a label—the Court is persuaded after reviewing the entirety of the Licensing Agreement that the adjective "non-exclusive" accurately describes the nature of Zetor Tractors' right to use and enforce the mark.

For example, in Section II of the Licensing Agreement, entitled "Rights and Duties of the Licensor," and in Section III, entitled "Rights and Duties of the Licensee," HTC grants Zetor Tractors permission to "grant a sublicense for the use of trademarks, which are the subject-matter of this Licensing Agreement" to any other entity or entities—provided that certain conditions are met. *Id.* at 4. However, HTC specifies that if Zetor Tractors "violates its obligations" by issuing a sub-license that does not conform to HTC's conditions, Zetor Tractors "shall pay to [HTC] a contractual fine of . . . ten million Czech Koruna." *Id.* at 5. Zetor Tractors lacks the unfettered discretion to

decide who receives a sub-license and who does not. In fact, HTC retains control over the sub-licensing process in that it requires Zetor Tractors "to notify [HTC] of each provision of any sublicense regarding the trademarks for which a license is granted . . . to any third person in writing within 30 days after the granting of such sublicense" and to attach "copies of contractors [sic] between the Licensee and the third person, to whom the sublicense is granted . . . ." *Id.*

As for the question of who may enforce HTC's trademark rights in the event of infringement, Zetor Tractors is not granted explicit permission to sue but instead is directed "to immediately inform the Licensor [HTC] as soon as it learns of any violations of the rights to the relevant trademarks and provide all necessary assistance in protecting the rights to such trademarks." *Id.* Certainly, "providing assistance" to the trademark owner is not the same as being granted permission to sue on the owner's behalf, in the manner of an assignee.

The Licensing Agreement makes explicit the fact that HTC retains important interests in the trademark and does not assign those rights to Zetor Tractors. In Section III.3, the document provides:

> The Licensee [Zetor Tractors] agrees not to take any steps to obtain ownership rights to the relevant trademarks or other marking similar to these trademarks without the written consent of the Licensor [HTC] during the term and even after the termination of the Agreement. In addition, it agrees not to take any measures aimed at registering such an identical or similar designation in its own name. This also applies to other countries where such designations are not protected.

*Id.*

15

The Licensing Agreement also contains a cautionary statement directed to Zetor Tractors, explaining that if Zetor Tractors "learns of any violations of the rights to the relevant trademarks," it will "immediately inform [HTC] . . . and *provide all necessary assistance* in protecting the rights to such trademarks." *Id.* (emphasis added). The agreement goes on to emphasize that in order to "avoid damage to *the Licensor's reputation* and a reduction of the value of the relevant trademarks," Zetor Tractors must "maintain the quality of products and services covered by the relevant trademarks at the highest level." *Id.* (emphasis added). All of these statements indicate that HTC retains substantial interest in its trademark rights and has not assigned such rights, including the right to sue on its behalf for infringement, to Zetor Tractors. *Cf. DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 622 (2d Cir. 1980) (denying standing to sue to a licensee whose contract stated it could not "claim any right whatsoever" in the trademark and was only directed to "notify" the owner and "take . . . steps as we may reasonably require" to protect the mark); *Gruen Mktg. Corp. v. Benrus Watch Co.*, 955 F.Supp. 979, 983 (N.D. Ill. 1997) (finding that the express language of the licensing agreement required the trademark owner's approval before the licensee could assign sub-licenses to others, and this showed that the owner retained ownership rights in the mark so as to deny the licensee standing to sue for infringement).

### (2). Zetor NA's Rights in the Trademark

At the outset, the Court observes that if Zetor Tractors lacks standing to sue for infringement, then certainly its subsidiary, Zetor NA—whose rights to trademark usage are more restricted, both geographically and otherwise—also lacks standing to sue.

Zetor NA's interests as a sub-licensee are subordinate to Zetor Tractors'. The plain language of the agreement between Zetor Tractors and Zetor NA, called the "Distribution Agreement," (Doc. 158-2), states explicitly that the Zetor mark is registered in a variety of countries, including the U.S., and that all marks are "owned by HTC." *Id.* at 23. The Distribution Agreement provides that if Zetor NA (the "Distributor") learns about any infringement activity, then Zetor NA "shall without undue delay inform the Company [Zetor Tractors] of such an infringement and provide the Company and the Owner of the Trademark [HTC] with necessary cooperation to protect the rights to the Trademark." *Id.* at 25. Again, the Court observes that having an obligation to "notify" and "provide cooperation" to the owner of the mark is not the same as being empowered by the owner to sue for infringement on the owner's behalf. Moreover, Zetor NA is an order of magnitude removed from HTC in this contractual relationship, and Zetor NA's property rights in the trademark are even more attenuated, as the Distribution Agreement directs Zetor NA to report instances of infringement first to Zetor Tractors, the mark's licensee, and not directly to HTC, the true owner of the mark.

The record also contains an amendment to the Distribution Agreement between Zetor NA and Zetor Tractors ("Amendment"). *See* Doc. 158-3. The Amendment extends the territory of Zetor NA from North America only to include South America and Central America, as well. The Amendment reiterates that Zetor NA possesses a "*non-exclusive* right for the word and graphic markings containing the expression ZETOR" and directs Zetor NA to use the mark within its new geographic territory, but under the set of conditions previously agreed to by the parties. *Id.* at 4 (emphasis added). In

addition, the Amendment contains the following restriction regarding Zetor NA's use of the mark:

> The Distributor [Zetor NA] is not entitled to use the ZETOR Markings in any other way different from the one specified in the Distribution Agreement without prior written consent of the Company [Zetor Tractors]. The Distributor is not entitled to use the ZETOR Markings for its own benefit to gain any profit from using the ZETOR Markings for other purpose than stipulated herein.

*Id.* at 4-5. And rather than empower Zetor NA to sue to act of its own accord to stop infringement activity, the amendment instead encourages Zetor NA "to immediately inform the Company [Zetor Tractors] about any violation of rights concerning the ZETOR Markings" and "provide the Company with the required cooperation" to protect the owner's rights. *Id.* at 5. For all these reasons, the Court finds that Zetor NA is not an exclusive licensee of the mark and that it lacks both statutory and contractual standing to sue for infringement under Section 1114 of the Lanham Act.

### (3). Effect of Blaskovic Affidavit

It appears Zetor NA saw the writing on the wall when its counsel reviewed the Ridgeway Defendants' Motion for Summary Judgment and realized—too late—that both the case law and all relevant licensing agreements fail to provide it with a sufficient legal basis to sue in its own right for trademark infringement. In a last-ditch attempt to fix the problem and create standing, Zetor NA submitted an affidavit (Doc. 176-1) signed by Martin Blaskovic, the Chairman of the Board of both HTC and Zetor Tractors, which purports to explain away the language of the Licensing Agreement, Distribution Amendment, and Amendment, and claim that the Zetor companies' true intention in

18

forming those agreements was to confer on Zetor NA the exclusive right to sue on HTC's behalf for infringement in North America. (Doc. 176-1).

In the affidavit, Mr. Blaskovic begins by explaining that, despite any contractual language to the contrary, it was always HTC's intent to exclusively license the Zetor mark to Zetor Tractors and to confer on that company "the sole and exclusive right and license to use, monitor, and enforce the 'Zetor' mark." *Id.* at 3. He goes on to explain that, in his understanding, Zetor NA was granted a sub-license by Zetor Tractors to "monitor and enforce the mark in its respective territories, which includes North America and South America." *Id.* He claims that both HTC and Zetor Tractors "are aware of the present case," "have remained informed of the proceedings," and desire Zetor NA to serve as Plaintiff in this action so that HTC and Zetor Tractors—both foreign companies—may avoid "the burdensome costs and complexities accompanying a suit in a foreign country." *Id.* Finally, he affirms that, if the Court deems it necessary, both HTC and Zetor Tractors "agree to be subject to the jurisdiction of this Court for the sole and limited purpose of joining this case as owners of property rights of the mark at issue in this case." *Id.* at 4.

In considering Mr. Blaskovic's affidavit, the Court first observes that it cannot trump the unambiguous language of the relevant agreements themselves. What Mr. Blaskovic claims was the true intent of HTC, Zetor Tractors, and Zetor NA regarding which entity may sue to protect HTC's trademark rights in North America is flatly contradicted by the terms of the Licensing Agreement, Distribution Agreement, and Amendment. His sworn statement of what all three companies intended cannot

overcome the fact that Zetor NA failed to submit any evidence of oral agreements that modified the terms of the original contracts, or else written modifications of those terms. Accordingly, the agreements explain the three Zetor companies' understanding about their respective property rights in the Zetor mark, and the Court is unwilling to make constructive amendments to the contracts' terms or interpret them in a manner that is opposite to their plain meanings simply because Mr. Blaskovic says so. *See Montwood Corp. v. Hot Springs Theme Park Corp.*, 766 F.2d 359, 361-62 (8th Cir. 1985) (finding parol evidence inadmissible under Arkansas law if the contract at issue is clear and unambiguous).

Important to all of the above concerns, however, is the fact that Mr. Blaskovic claims that both HTC and Zetor Tractors have known about and been kept apprised of Zetor NA's prosecution of this lawsuit and have agreed to Zetor NA taking the lead role as Plaintiff. Also of consequence is Mr. Blaskovic's affirmation, presumably made on behalf of HTC and Zetor Tractors, that neither company would object if the Court determined that either or both of them was indispensable to resolving this litigation and required either or both of their participation as plaintiffs.

In reviewing the Ridgeway Defendants' Reply to Zetor NA's Response to the standing argument, it appears Defendants object to the Court joining or substituting HTC and Zetor Tractors as plaintiffs at this late hour because Defendants "will not have the opportunity to depose anyone from HTC or Zetor a.s. before the trial of this matter or otherwise conduct discovery with respect to these entities." (Doc. 105, p. 5). The Court finds this objection to be frivolous for a number of reasons. First, the issue as to

20

standing should have been raised earlier in the proceedings. The settlement agreement that the parties entered into in 2009 was signed by HTC, Zetor Tractors, and Zetor NA. HTC was identified as the owner of the trademark in the original Complaint filed in 2015. If the Ridgeway Defendants had questions or concerns about whether Zetor NA possessed the authority to sue for infringement, and whether either of the other related entities should have been joined as plaintiffs, the issue should have been ferreted out years ago instead of raised in "gotcha" fashion on summary judgment, barely two months before the scheduled date of trial.

Second, the Court disagrees that the Ridgeway Defendants will need to depose anyone specifically from HTC or take further discovery from HTC to defend against the trademark infringement claims lodged in this lawsuit. Even if HTC is added to the lawsuit as the true owner of the mark, the nature of these claims and the Ridgeway Defendants' theory of defense will not change. The Ridgeway Defendants already briefed the merits of the claims on summary judgment, and in both the original and the Amended Complaints, they were on notice that HTC owned the mark. They deposed Mr. Blaskovic. *See* Doc. 158-10. They could have taken discovery as to the issues concerning ownership at any point but chose not to do so. Furthermore, Plaintiff informed the Court in an email, with a copy sent to the Ridgeway Defendants' counsel, that Mr. Blaskovic intends to be present at trial and to testify. That same email, dated July 2, 2018, states that Mr. Blaskovic is President of Zetor NA. The relatedness of the three companies—HTC, Zetor Tractors, and Zetor NA—and the fact that Mr. Blaskovic

has a leadership role in all three also indicates that none of the Defendants will suffer prejudice if HTC is added to the lawsuit.

Lastly, the Ridgeway Defendants reference Federal Rule of Civil Procedure 19(a) and suggest that the Court should dismiss the case with prejudice due to Zetor NA's failure to join necessary parties Zetor Tractors and/or HTC. Rule 19 arguments are ordinarily asserted in the context of a Rule 12(b)(7) motion to dismiss, and the Ridgeway Defendants failed to make such a motion or make a failure-to-join claim as an affirmative defense to the Amended Complaint in either their original answer (Doc. 27) or their Amended Answer (Doc. 136). In their Motion for Summary Judgment, they do not suggest that joinder of HTC is somehow infeasible due to the proposed joined party's objection to venue, or because joinder would rob the Court of jurisdiction. In general, when a necessary party is identified by the court, the ordinary remedy is to dismiss the matter *without prejudice* and afford the plaintiff an opportunity to file an amended complaint to include the necessary party. *See* Fed. R. Civ. P. 19(a) ("If a person has not been joined as required, the court must order that the person be made a party."); *Sladek v. Bell Sys. Mgmt. Pension Plan*, 880 F.2d 972, 980 (7th Cir. 1989) ("The dismissal of a complaint for failure to join an indispensable party is entirely appropriate under Rule 12(b)(7), but dismissal *with prejudice* should ordinarily result only after the court has ordered the party joined and the plaintiff has failed to do so." (emphasis in original)).

The Court finds that Zetor NA lacks standing to assert claims for trademark infringement, and HTC, the trademark's owner, has retained all substantial rights in the

22

mark and is necessary to join as a plaintiff in this case in order to fully dispose of all pending claims. However, the Court also finds that dismissing this Count without prejudice would serve no constructive purpose and would only protract the litigation further. Therefore, the Court **DIRECTS** Plaintiff to file an amended complaint that adds HTC Holding a.s. as an additional plaintiff by no later than **Friday, August 17, 2018**. Plaintiff is not permitted to add any new factual allegations, claims, or causes of action to the amended complaint beyond the minimal additions that will be required in the "Parties" and "Jurisdiction" sections of the pleading.[2] Once HTC is added as a plaintiff, there will no longer be a standing issue. In light of these decisions, the Court will proceed in the next section of its discussion to examine the second part of the prima facie case for trademark infringement: likelihood of consumer confusion.

### ii. Likelihood of Consumer Confusion

> If a plaintiff succeeds in making out a prima facie case of trademark infringement, including the element of likelihood of consumer confusion, the defendant may offer rebutting evidence to undercut the force of the plaintiff's evidence on this (or any) element, or raise an affirmative defense to bar relief even if the prima facie case is sound, or do both.

*KP Permanent Make–Up, Inc. v. Lasting Impression I*, 543 U.S. 111, 120 (2004); *see also* 15 U.S.C. § 1115(b) (listing defenses). Indeed, "merely rebutting the plaintiff's case on confusion would entitle the defendant to judgment, good faith or not." *KP*, 543 U.S. at 120.

---

[2] As previously mentioned, the current version of the Amended Complaint (Doc. 21) already identifies HTC as the owner of the trademark.

The Ridgeway Defendants contend that Zetor NA has failed to make out a prima facie case of trademark infringement because it has failed to establish proof of a likelihood of consumer confusion. The following six factors should be considered in determining whether there is a likelihood of confusion:

(1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase.

*Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 (8th Cir. 2010).

As to the first factor, the Court finds that Zetor NA has set forth enough proof on summary judgment to establish a prima facie case for the strength of the Zetor mark. The Ridgeway Defendants concede that "the Zetor mark may possess inherent conceptual strength," but they dispute its overall strength because it allegedly lacks "commercial strength." (Doc. 158, p. 8). In support of this argument, the Ridgeway Defendants note that many consumers "had never even heard of Zetor," and the brand purportedly occupies only a small percentage of the market share for tractors in the United States. *Id.* But the "strength of the mark" inquiry has nothing to do with the commercial strength/success of the mark or the marked product in the marketplace. It refers instead to whether the mark is distinctive—as opposed to generic. Here, the Ridgeway Defendants have failed to rebut Zetor NA's contention that "ZETOR" is a fanciful term that is neither generic nor descriptive. *See Sensient*, 613 F.3d at 763 (explaining that marks may be "generic, descriptive, suggestive, or arbitrary or fanciful" and that "an arbitrary or fanciful mark is entitled to the highest level of protection").

24

The second factor in the test is the similarity between the owner's mark and the alleged infringer's mark. The dispute at hand does not center on whether Zetor's mark is confusingly similar to Ridgeway's. Instead, Zetor NA accuses Ridgeway of appropriating the Zetor mark for use in Ridgeway's advertising and marketing materials without permission, and in a way that would tend to confuse consumers as to the source of Ridgeway's products (which is not Zetor). The evidence presented by Zetor NA satisfies its prima facie burden as to this factor, as there is no dispute that Ridgeway uses Zetor's *actual mark* on its advertising and marketing materials.

The third factor is the degree to which the products at issue compete with one another in the market. The parties do not dispute that: (1) Ridgeway sells tractor parts and advertises to its customers that those parts may be used in Zetor tractors, (2) Ridgeway sells parts made by manufacturers other than Zetor that, nonetheless, may fit in Zetor tractors and are generally sold at lower prices than genuine, licensed Zetor parts, and (3) Ridgeway is not a licensed dealer of Zetor parts. Zetor NA has produced evidence that the tractor parts that Ridgeway sells are in direct competition with Zetor's genuine parts. For example, Brent Rozeboom, who was identified by Ridgeway as a Rule 30(b)(6) witness, testified that he considered Zetor NA to be a competitor of Ridgeway. *See* Doc. 148-8, p. 9. The evidence presented is therefore sufficient to meet Zetor NA's burden of establishing the element of market competition.

The fourth factor of the test considers the Ridgeway Defendants' intent to "pass off" the tractor parts it sells as genuine, licensed Zetor tractor parts. *See Dakota Indus. v. Dakota Sportswear*, 946 F.2d 1384, 1388 (8th Cir. 1991) (defining "passing off" as

25

when "the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's" (internal quotation and citation omitted)). Zetor NA points out that the parties were previously embroiled in a dispute over whether Ridgeway infringed upon the Zetor mark. After that, Ridgeway was arguably placed on notice as to what sorts of activities would constitute infringement, and what would not, as memorialized in the parties' 2009 settlement agreement. A factfinder could therefore gather that proof of Ridgeway's unauthorized use of the mark in its advertising and marketing would tend to indicate the intentional nature of that use, rather than merely accidental use. Furthermore, Zetor NA has produced other evidence of intentional use, including a copy of Ridgeway's website in October of 2014, in which Ridgeway represented that it sold "genuine original equipment manufacturer parts that are shipped to us from the Czech Republic" as well as "parts from other manufacturers that will work for Zetor equipment." (Doc. 177-6, p. 2). Considering the evidence presented by Zetor NA, the Court finds that it has met its prima facie burden to show intentional "passing off."

The fifth factor concerns evidence of actual consumer confusion. Here, Zetor NA has presented evidence of actual confusion from multiple sources, but the Ridgeway Defendants have largely ignored this evidence and have instead focused on the sufficiency of a survey conducted by Zetor NA's purported expert, Dr. Stephen Kopp. Dr. Kopp's survey is intended to show the likelihood that consumers viewing Ridgeway's website will be confused as to the source of Ridgeway's tractor parts. The Court will separately address the sufficiency of the survey evidence and Dr. Kopp's opinion later in its discussion, but for now notes that the evidence of actual confusion that Zetor NA

has presented is sufficient to meet its burden of production and justify sending the matter to the jury on the issue of likelihood of confusion, even if the survey evidence were discounted. For example, Ridgeway customer Darryl Vaughn testified that he assumed that certain tractor parts he ordered from Ridgeway were genuine Zetor parts "by the packaging . . . they come in." (Doc. 176-10, p. 6). He testified that "over the course of the years most everything came in packaging that looked like had Zetor numbers and I assumed were OEM [Original Equipment Manufacturer] products." *Id.* at 10-11. He further testified that he had conversations with Brent Rozeboom in which Mr. Rozeboom had intimated that the parts came from Czechoslovakia and were therefore genuine Zetor parts. *Id.*

Next, Zetor tractor dealer Wayne Middendorf testified that he had "quite a few" customers talk to him about parts they purchased from Ridgeway that were problematic. (Doc. 176-11, p. 7). In one instance, Mr. Middendorf's customer brought him a tractor part he ordered from Ridgeway that did not fit the customer's Zetor tractor. The part "had a part number that is the same number as the Zetor part number," had a Zetor logo on it, and looked like a Zetor part, but was not the same size and specifications as the Zetor part, so the part did not fit properly in the Zetor tractor. *See id.* at 9. Mr. Middendorf explained that he had also ordered tractor parts directly from Ridgeway for his customers, when the parts were on back-order from Zetor NA (the licensed dealer). Although Mr. Middendorf stated that he did not specifically ask Brent Rozeboom whether the parts were "original," Mr. Middendorf believed that "the way they were packaged, the way they came, they . . . sure looked . . . original, like the same parts I

27

would get from Zetor. In the same packaging." *Id.* at 13-14. "But when you t[ook] it out of the package you could see some . . . differences" that would "probably not" be apparent to someone who was not a Zetor dealer. *Id.* at 14.

Christine Gyllenberg testified in her deposition that she Googled Zetor parts one day and came across Ridgeway's website. (Doc. 176-12, p. 5). She noticed that the particular tractor part she was interested in was offered at a lower price by Ridgeway, as compared to the price offered by Zetor NA. This was confusing to her. *Id.* at 6. She emailed Petr Laznicka, Spare Parts Manager for Zetor NA, and asked why the price to order a part directly from Zetor NA was higher than the price from Ridgeway. *Id.* Ms. Gyllenberg stated that she was unsure whether Ridgeway's parts were genuine Zetor parts, due in part to the fact that she obtained a price book from Ridgeway, "and there was some stuff in here that said that the parts were from Czech Republic. And there were also some parts pictures that showed the Zetor logo." *Id.* at 7. Brent Rozeboom also confirmed in his deposition that some of his customers and potential customers previously indicated that they thought he was affiliated with Zetor and that Ridgeway was "[p]robably . . . a Zetor Dealer." (Doc. 177-1, p. 15).

Lastly, Petr Laznicka of Zetor NA testified that he received phone calls from customers who received Zetor tractor parts from Ridgeway that did not fit their tractors. (Doc. 176-1, p. 6). The customers expressed confusion about whether the part they purchased from Ridgeway was a genuine Zetor part. Mr. Laznicka claimed in his deposition that he inspected some of the parts in question and took pictures of the packaging. *Id.* at 9. He provided copies of emails and photographs from customers

and dealers to substantiate his claim that they were confused about whether the source of Ridgeway's parts was Zetor and whether Ridgeway was selling OEM parts. *See* Doc. 17-7. The above evidence of actual consumer confusion weighs in favor of a finding that Zetor has met its burden of showing a likelihood of confusion on summary judgment.

Moving on to the sixth and final factor in the analysis, the Eighth Circuit directs the district court to consider the type of product at issue, its cost, and the conditions of purchase to determine whether the typical consumer of the product—one who may have more expertise in the market, for example—might not, in fact, be confused as to the source of the product. *Sensient*, 613 F.3d at 769. If the Court were to conclude that the product is typically sold to sophisticated consumers after a collaborative process, then it would follow that the likelihood of confusion would be diminished. *Id.* The Ridgeway Defendants through their expert witness, Hal Poret, contend that buying tractor parts is a serious, considered affair, "not like grabbing a candy bar off the counter at a supermarket which you might do without thinking in three seconds." (Doc. 158, p. 19). The Ridgeway Defendants argue unpersuasively that it is unlikely that a potential customer would be confused as to any affiliation between Ridgeway and the Zetor mark because "[a]ny person shopping for a Zetor part necessarily spend[s] an ample amount of time searching for the specific part needed to fix his or her Zetor tractor." *Id.* The Court notes that the instances of actual consumer confusion documented in the previous several paragraphs contradict this reasoning. Moreover, if Ridgeway's website, catalog, and other marketing materials use the Zetor mark in an

unauthorized manner, and if Ridgeway's principals and other representatives make representations to consumers as to the source of the parts, it follows that no amount of time spent by consumers studying these materials would clear up the confusion or potential for confusion.

Accordingly, the Court finds that the balance of the six factors described herein weigh in favor of finding that Zetor NA has met its prima facie burden of showing a likelihood of consumer confusion, even before the survey evidence produced by its expert is considered. As the Ridgeway Defendants have not produced any affirmative rebuttal evidence of their own—in the form of oppositional surveys or other documents or testimony—that would tend to undercut the force of Zetor NA's evidence or raise an affirmative defense to bar relief even if the prima facie case is established, the Court finds that Count I survives summary judgment, subject to Zetor NA amending its complaint to add HTC as a plaintiff. Once that amendment is made, this claim will be ready for trial.

### b. Count II—Lanham Act Violation for Unfair Competition

Count II of the Amended Complaint alleges a violation of the Lanham Act at 15 U.S.C. § 1125(a)(1) for using "any word, term, name, [or] symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact," in a way that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation . . . as to the origin, sponsorship, or approval" of the goods. Unlike a suit under Section 1114, a violation of Section 1125 does not necessarily require the owner of the trademark to serve as plaintiff. Instead "any person

30

who believes that he or she is or is likely to be damaged by such act" may bring suit. 15 U.S.C. § 1125(a)(1)(B).

Zetor NA suggests that it may bring suit in its own right, as one who is or is likely to be damaged by Defendants' alleged "passing off" activity. The United States Supreme Court has held that to bring suit under Section 1125(a), "a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l. v. Static Control Components*, 134 S. Ct. 1377, 1390 (2014). Other than the issue of standing to bring suit, the elements of a claim for unfair competition under Section 1125(a) are essentially the same as those for trademark infringement under Section 1114. *Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005). As the Court found in its earlier discussion that Zetor NA met its burden on summary judgment to establish: (1) that the Zetor mark is entitled to protection, (2) was used by the Ridgeway Defendants in commerce, and (3) was used in a manner that was likely to cause consumer confusion, the only element left for the Court to consider as to Count II is Zetor NA's standing to bring the claim.

As previously discussed, the Court finds that the Licensing Agreement between HTC and Zetor Tractors did not specifically grant Zetor Tractors the right to sue and enforce the mark on HTC's behalf, and instead reserved many rights with respect to the mark to HTC for its exclusive use. Also, the Court found that the Distribution Agreement between Zetor Tractors and Zetor NA specified that Zetor NA's non-exclusive sub-license to use the mark was even more restricted than Zetor Tractors' license, particularly with respect to restrictions on geography, as well as other factors. In

31

addition, the Distribution Agreement did not specifically grant Zetor NA the right to sue and enforce the mark on HTC's behalf and reserved substantial rights to the mark for HTC's benefit and use. Because of these findings, and because no specific evidence was presented on summary judgment as to what *particular injury* Zetor NA suffered as to its commercial interest or sales—as distinguished from HTC's—the Court is reluctant to find that Zetor NA has sufficiently established standing to bring this claim on its own.

All doubts as to standing are satisfied, however, if HTC is added to the lawsuit. The Court has already ordered Zetor NA to file an amended complaint to add HTC as a plaintiff, and once this occurs, there will be standing for Zetor NA and HTC to bring Count II.

### c. Count V—Trademark Infringement and Unfair Competition

Count V is a claim for trademark infringement and unfair competition under the common law. The claim is essentially the same as the Lanham Act claims in Counts I and II, both of which the Court has dismissed without prejudice, due to standing, but has declined to dismiss on the merits on summary judgment. Both claims will be reinstated following the filing of an amended complaint, and the Court anticipates that they will ultimately go to trial.

The parties agree in their respective briefs on summary judgment that the common law on trademark is in accord with the law concerning violations of the Lanham Act. Indeed, as this Court previously explained in *Visual Dynamics, LLC v. Chaos Software, Ltd.*, 2018 U.S. Dist. LEXIS 24362, at *21-22 (W.D. Ark. Feb. 12, 2018), "a claimant may establish violations of all of 15 U.S.C. § 1114(1)(a), 15 U.S.C.

32

§ 1125(a)(1)(A), Ark. Code Ann. 4–71–212, Arkansas common-law trademark infringement, and Arkansas common-law unfair competition, simply by proving both of the following elements: '(1) that it owns a valid, protectable mark; and (2) that there is a likelihood of confusion between its mark and [the] defendant's mark.'" (quoting *B & B Hardware, Inc. v. Hargis Indus.*, 569 F.3d 383, 389 (8th Cir. 2009)). As the Court finds that Zetor NA has raised a genuine dispute of material fact as to whether the Ridgeway Defendants committed trademark infringement and unfair competition, Count V—asserting the same claims under the common law—is also preserved for trial.

### d. Count VI—ADTPA Violation

Count VI asserts that the Defendants violated the ADTPA by making false or misleading representations in their marketing and advertising in a way that was deceptive and intended to confuse consumers as to the source of the goods. (Doc. 21, pp. 13-14). The ADTPA provides a private right of action to "any person" who suffers actual damage or injury as a result of a violation of the Act. *See* Ark. Code Ann. § 4–88–113(f). The Act prohibits a variety of listed practices, including "[k]nowingly making a false representation as to the . . . source, sponsorship, approval, or certification of goods or services" and "any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4–88–107(a)(1), (a)(10). Under the version of the statute that was in effect at the time of the alleged wrongful conduct, a private right of action was available for "[a]ny person who suffers actual financial damage or injury as a result of an offense or violation." Ark. Code Ann. § 4–88–113(f) (2011). The ADTPA was amended in 2017. The amended statute now

states that a private right of action can only be brought by "[a] person who suffers an actual financial loss as a result of his or her reliance on the use of a practice declared unlawful" by the Act. Ark. Code Ann. § 4-88-113(f)(1)(A) (2017). The 2017 amendment also clarified that a claimant "must prove individually that he or she suffered an actual financial loss proximately caused by his or her reliance on the use of a practice declared unlawful under this chapter." Ark. Code Ann. § 4-88-113(f)(2).

The Court interprets the 2017 amendment to the ADTPA to mean that in most, if not all, cases, an individual or entity bringing a private right of action must suffer financial loss as a result of its own reliance on another party's unlawful and misleading business practices. Here, Zetor NA is not a consumer of Ridgeway's goods, so it did not suffer any alleged financial loss as a result of its reliance on Ridgeway's advertising and marketing. However, the Court previously considered the retroactive effect of the 2017 amendment to the ADTPA in *Mounce v. CHSPCS, LLC*, 2017 WL 4392048, at \*7 (Sept. 29, 2017 W.D. Ark.), and found at the time that the textual changes to the ADTPA cited above—namely, the additional requirement of proof of actual financial loss and proximate causation/direct reliance—were substantive in nature, "in that [they] could deprive a claimant of the ability to assert a cause of action that she could have asserted under the former version of the Act." *Id.* This Court in *Mounce* therefore concluded: "Because the amendment is substantive, it should only be given prospective effect." *Id.*

Other courts in Arkansas applying the 2011 version of the ADTPA—prior to the 2017 amendment—have also found that businesses that were not direct consumers of products deceptively advertised, but were "persons" suffering damage as a result of an

34

alleged deceptive act or practice, could, in fact, reasonably file suit under the plain language of the statute. *See Vanoven v. Chesapeake Energy Corp.*, 2011 WL 1042251, at *5 (E.D. Ark. Mar. 22, 2011) ("Accordingly, by its plain terms, the ADTPA protects the business community at large, providing its members with a broad cause of action to remedy harms suffered from deceptive or unconscionable conduct."); *ElectroCraft Ark., Inc. v. Super Elec. Motors*, 2009 WL 5181854, at *7 (E.D. Ark. Dec. 23, 2009) ("The Court additionally finds that the ADTPA is not limited to actions brought by consumers . . . . The ADTPA does not state that business entities or non-consumers cannot utilize its provisions as a basis for recovery and, thus, one does not have to be a consumer to recover under the ADTPA." (internal quotation marks and citation omitted)).

Under the 2011 version of the ADTPA, to establish a claim for damages, a plaintiff was required to set forth proof of: "(1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act." *Skalla v. Canepari*, 2013 Ark. 415, at *14 (2013). The Court finds that the Ridgeway Defendants are not entitled to summary judgment on the ADTPA claim because there remain genuine, material questions of fact as to whether the Defendants engaged in a deceptive consumer-oriented act with respect to their advertising and marketing of tractor parts, and whether Plaintiffs suffered actual damages as a result. This claim will be preserved for trial.

### e. Count VIII—Civil Conspiracy

The last cause of action in the Amended Complaint is one for civil conspiracy. "Civil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong." *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 445 (2001). A claim for civil conspiracy must allege the existence of an agreement to accomplish a purpose "that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive, or immoral, by unlawful, oppressive or immoral means, to the injury of another." *Id.* (citing *Mason v. Funderburk*, 247 Ark. 521, 529 (1969)). Because civil conspiracy is not a separate tort, it must be premised on some underlying tortious activity. *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004). "Infringement of a trademark is a tort," *Dakota Indus. v. Dakota Sportswear*, 946 F.2d 1384, 1388 (8th Cir. 1991), and in the case at bar, Zetor NA contends that Defendants conspired to pass off their products as authentic OEM Zetor parts, in violation of trademark law. Further, Zetor NA argues that by purposefully structuring Ridgeway as a "private company trust," the business structure obscures who is liable for the acts and omissions of Ridgeway and furthers the conspiracy.

The Ridgeway Defendants' Motion for Summary Judgment recites the elements of a claim for civil conspiracy and then states without further explanation that "the only evidence cited by Plaintiff is insufficient as a matter of law to establish that any of the Defendants entered into a conspiracy with one another." (Doc. 158, p. 30). The Court disagrees and finds that there remain genuine, material disputes of fact as to whether the Defendants conspired to infringe upon the registered mark in question and trade on

36

the goodwill and brand-recognition inspired by the mark. There are further questions of fact as to whether the Defendants collectively acted to obscure the identities of the individuals, companies, and other entities behind the conspiracy by setting up illegitimate business organizations. This claim will remain for trial.

## 2. Motion in Limine

In their Motion in Limine, the Ridgeway Defendants seek to exclude testimony offered by Zetor NA's experts, Dr. Steven Kopp and Dennis Sisson, CPA. Specifically, they seek to exclude: (1) Dr. Kopp's survey and opinion testimony about the likelihood of consumer confusion resulting from Ridgeway's advertising and marketing, and (2) Mr. Sisson's opinion that Ridgeway's business structure is designed to conceal assets and avoid paying taxes. Zetor NA opposes the Motion.

### a. Dr. Kopp and the Consumer Confusion Survey

Dr. Kopp is a marketing professor at the University of Arkansas who teaches marketing and research strategy. According to his affidavit, he has worked in the area of trademark and intellectual property research for almost 30 years and has published numerous peer-reviewed articles related to trademark. *See* Doc. 176-15, p. 3. The Ridgeway Defendants contend that Dr. Kopp possesses only generalized knowledge of market and consumer research, has never testified as an expert in a trademark case, and is unfamiliar with the term "net confusion," which the Ridgeway Defendants' expert claims is a common term that federal courts use in determining likelihood of confusion. For those reasons, the Ridgeway Defendants claim Dr. Kopp is not qualified to offer an expert opinion in this case.

The decision whether to exclude expert testimony is committed to a district court's discretion, subject to the Federal Rules of Evidence, including Rule 702. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014). Rule 702 states that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Eighth Circuit has simplified these requirements into a three-part test:

First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnso*n, 754 F.3d at 561 (quoting *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008)).

The proponent of expert testimony bears the burden of showing by a preponderance of the evidence that these requirements are satisfied, but "[c]ourts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006). Nevertheless, "a court should not admit opinion evidence that 'is connected to existing data only by the ipse dixit of the expert.'" *Id.* at 758 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

38

In reviewing Dr. Kopp's CV and affidavit, the Court finds that his background, experience, and education are adequate to allow him to opine on the subject of market and consumer research, including trademark-related issues such as likelihood of confusion. According to his CV, he received a Master's of Business Administration as well as a doctoral degree in Marketing and has taught at the university level and gathered and analyzed survey data for over 25 years. (Doc. 165-2, p. 2). He serves on the editorial review board for five different marketing or advertising journals and critiques experimental and survey-based studies in his editorial capacity. *Id.* He also claims authorship of 13 published articles in peer-reviewed journals, three of which appear to concern product marketing and/or intellectual property rights. His affidavit lists nine peer-reviewed conference presentations on the subject of trademark infringement, including consumer confusion. The fact that Dr. Kopp has never served as an expert witness at a trademark trial is not disqualifying. This Court therefore concludes that Dr. Kopp's qualifications are sufficient to allow him to offer expert opinions on the subject matter of his proposed testimony.

The *Johnson* Court, interpreting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-9 (1993), explained that a trial court evaluating the sufficiency of an expert's proposed testimony must make an "assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Johnson*, 754 F.3d at 562. Rather than exclude any of Dr. Kopp's opinions at the outset, as Defendants urge, the Court finds instead that they should be "tested by the adversary

process with competing expert testimony and cross–examination . . . ." *Id.* (quoting *Daubert*, 509 U.S. at 590).

As for the admissibility of Dr. Kopp's survey on likelihood of confusion, Defendants' expert, Hal Poret, opined that Dr. Kopp's survey is flawed because he did not: (1) survey the proper universe, (2) utilize a proper control group, (3) realistically simulate market conditions, and (4) properly account for "survey noise" and assess what Mr. Poret calls "net confusion." With regard to the first criticism, Mr. Poret claims that Dr. Kopp did not properly survey a group of persons that would include the potential purchasers of Zetor tractor parts. When Mr. Poret testified in his deposition, he explained that the universe of survey participants must be "a realistic test that's going to tell us whether real consumers in the real world will be confused." (Doc. 165-4, p. 12). In his opinion, those who were surveyed had to have been those "who own a Zetor tractor or otherwise have some reason to consider going on a website to buy parts for a Zetor tractor," otherwise the universe would have been unrealistic. *Id.*

Dr. Kopp's survey included "known farmers, farm equipment dealers, farm equipment repair, Ridgeway customers, Zetor dealers (and owners), and other people who had experience with or involvement with farm equipment." *See* Doc. 176-14, p. 9. Responses to the survey came from 46 states and 5 Canadian provinces, with traditional farming states—such as Iowa, Illinois, Missouri, Indiana, California, Ohio, and Wisconsin—returning the majority of the responses. *Id.*

After examining Dr. Kopp's survey, the Court is unpersuaded that it is so fundamentally flawed and devoid of scientific validity that it lacks probative value on the

issue of likelihood of confusion. While Mr. Poret has pointed out a few ways in which he would have conducted the survey differently, including selecting a more limited universe, it is not facially unreasonable for Dr. Kopp to have defined the universe as including both actual and potential buyers of Zetor tractor parts, including those participants who own farm equipment and are familiar with farming methods, even if they do not currently own Zetor tractors. The Eighth Circuit has previously held that "an action for trademark infringement may be based on confusion of consumers other than direct purchasers, including observers of an allegedly infringing product in use by a direct purchaser." *Insty\*Bit, Inc. v. Poly-Tech Indus., Inc.*, 95 F.3d 663, 672 (8th Cir. 1996).

In considering the universe of survey subjects Dr. Kopp used and the reasons why he selected them, the Court finds Dr. Kopp's decision to survey customers who were familiar with farming and likely to buy tractor and/or farm equipment—but who were not necessarily owners of Zetor tractors—is supported by reasonable assumptions and conclusions and is the product of testable research methods and principles. Though Dr. Kopp and Mr. Poret may reasonably disagree about whether the universe of survey participants was too broad or just broad enough, these objections go more to the weight of the evidence, not to its admissibility. Even Mr. Poret concedes that "there is nothing that tells you exactly how to [choose an appropriate universe of respondents] in any particular case," (Doc. 165-4, p. 16), and in any event, the bottom line is that the "proper universe consists[s] of potential purchasers of the products at issue," *id.* at 17.

41

As for Mr. Poret's claim that Dr. Kopp failed to use a proper control group, the Court once again finds that this criticism does not mean that the survey lacks testable scientific value and would not be potentially relevant and helpful to the jury. Dr. Kopp explained in his testimony that he did use control groups in conducting the survey. A control is used to compare how participants are answering the survey questions in order to determine whether outside forces or assumptions may be influencing the answers. In the survey here, Dr. Kopp showed the survey participants four webpages similar to Ridgeway's in order to test whether Ridgeway's advertising and marketing were likely to cause confusion as to the source/quality/authenticity of the products. Two of the pages Dr. Kopp created were designed to be the controls. One of those controls was a webpage that did not contain a disclaimer as to the website's affiliation with Zetor, and the second webpage featured an image of a Kubota tractor, rather than a Zetor tractor.

Dr. Kopp used the first control webpage to compare whether the participants' responses to the survey varied depending on whether a disclaimer appeared on the bottom of the page. He used the second control webpage to test whether depicting a particular brand of tractor on the webpage would cause confusion among consumers and influence their responses. Mr. Poret explains that "[w]hat a control group is supposed to do is it's supposed to be an alternate version of the website that eliminates any supposedly improper use," but he criticizes Dr. Kopp for creating an alternate version of the website that is "more confusing" because it eliminated the disclaimer language that Ridgeway currently has on its website. (Doc. 165-4, p. 21). Though the Court finds Mr. Poret's objections to be sincerely held and potentially good subject

42

matter for debate, it is not clear to the Court that Dr. Kopp failed to include a control or controls in the survey, such as to render the survey scientifically invalid.

Moving on to Mr. Poret's criticism about the survey simulating true market conditions, he believes that there were no quality control standards in place to make certain that participants "meaningfully reviewed the web page," and he believes the fact that survey participants could take the survey on their mobile phones tends to imply that they were more likely to be distracted while taking the survey and were not able to see the website clearly. *Id.* at 25. Zetor NA disagrees with these arguments, pointing out that Ridgeway's website was reformatted in 2015 specifically to accommodate customers using mobile devices. Zetor NA also observes that some Zetor consumers actually view Ridgeway's webpage from their mobile phones.

Dr. Kopp points out that his survey advised participants to take as much time as they needed to review the web page before moving on. Mr. Poret's testimony does not persuasively explain why Dr. Kopp's written advice to participants to pay attention and take their time was not sufficient to create a testable, verifiable result, over some other method of verification.

Mr. Poret's final criticism of the survey is that it fails to properly account for "survey noise" and assess what Mr. Poret calls "net confusion." This criticism is closely related to Mr. Poret's critique about the lack of a proper control group. He argues that because Dr. Kopp failed to set up proper control webpages, he was unable to screen out the "noise" resulting from survey participants being confused by other, extraneous information that could also cause confusion. As previously explained, the Court finds

43

that Dr. Kopp's use of controls and his design of the survey appear supported by scientific methods and are capable of reproduction. In addition, the Court finds that Dr. Kopp is qualified to render an expert opinion on the topic of likelihood of confusion, and he has meaningful professional experience in designing, conducting, and analyzing surveys based on marketing and advertising. Rather than exclude the survey, the Court will permit its introduction and afford the Ridgeway Defendants, through their expert, an opportunity to attack the weight of the evidence presented in the survey and attempt to convince the jury that its value is negligible.

### b. Mr. Sisson's Opinion

The Ridgeway Defendants also critique Plaintiff's second expert, Mr. Dennis Sisson, arguing that his opinion is not based on established scientific principles, is unrelated to any claim or defense, constitutes an impermissible legal conclusion, and, if allowed into evidence, would unduly prejudice and confuse the jury. Mr. Sisson, who is a Certified Public Accountant ("CPA"), was hired by Zetor NA to consider whether Ridgeway's business organization and the business practices of its managers, Brent and Glenda Rozeboom, were designed to conceal assets and income from third parties, particularly the Internal Revenue Service ("IRS"). The Ridgeway Defendants label Mr. Sisson's opinions about Ridgeway's business organization as "inflammatory" as well as confusing and misleading. (Doc. 165, p. 12).

Mr. Sisson's CV reveals that he holds a Bachelor of Science in Business Administration and is a licensed CPA. He was an Internal Revenue Agent for the IRS for eight years, and then he worked in the private sector as an accountant for the next

24 years. See Doc. 179-6, p. 2. He describes himself as having "[c]onsiderable training and experience in the application of tax laws and dealing with taxing authorities and their related investigations," as well as experience in "the preparation of all forms of tax returns" and work on "business start-ups, consolidations and liquidations." Id. The Court finds that Mr. Sisson's background qualifies him to offer expert opinions related to accounting, the tax treatment of business entities, and the use of fictitious business structures to avoid paying taxes.

Even though Mr. Sisson is a qualified expert, this does not mean that his proposed testimony would be both proper and relevant to present to a jury. Importantly, Mr. Sisson was not hired by Zetor NA to opine about the validity of any of the Defendants' income tax returns. Instead, Mr. Sisson was provided with copies of documents that memorialized the "pure trust" business structure used by Defendant Alberni Enterprises and the "private business company trust" used by Ridgeway. He was then asked to opine about whether these business structures were "designed for the purpose of concealing assets from third parties." (Doc. 177-2, p. 2). Mr. Sisson explains in his expert report what he believes is "the purpose of pure trusts," and then he goes on to list the "common feature[s]" of these types of business structures. Id. at 3.

Regardless of how Zetor NA frames Mr. Sisson's opinions, the Court does not believe they will aid the jury in its determination of the fact issues in this case. None of the claims have to do with income tax fraud. Instead, the case alleges trademark infringement and unfair competition, consumer fraud and deception, and civil

conspiracy. Arguably, knowing what a "pure trust" and a "private company trust" are might be of assistance if the jury were being asked to determine whether to pierce the corporate veil and hold the principals of these businesses personally liable for wrongdoing done by their companies. But piercing the corporate veil is a legal analysis, and Mr. Sisson may not offer legal opinions to the jury. Moreover, the Court does not anticipate that any fact issues related to piercing the corporate veil would ever go to the jury, based on how the case has been postured to date. Finally, even if Mr. Sisson's opinions on these matters could be characterized as marginally relevant or useful, the Court finds that their probative value would be substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

For all of these reasons, the Court grants the Ridgeway Defendants' request to exclude Mr. Sisson from rendering expert testimony at trial and finds his expert report and conclusions therein to be inadmissible.

## IV. CONCLUSION

In accordance with the reasoning set forth above, **IT IS ORDERED** that Zetor NA's Motion for Partial Summary Judgment (Doc. 154) and Motion to Dismiss Counts III, IV, and VII (Doc. 169) are **GRANTED**. Count II of the Counterclaim is **DISMISSED WITH PREJUDICE**, and Counts III, IV, and VII of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 41(a)(2).

**IT IS FURTHER ORDERED** that the Ridgeway Defendants' Motion for Summary Judgment (Doc. 157) is **DENIED IN PART AND MOOT IN PART**. The Motion is **DENIED** with respect to Counts V, VI, and VIII of the Amended Complaint. The Motion

is **MOOT** as to Counts III, IV, and VII, which were dismissed without prejudice on Plaintiff's motion, pursuant to Rule 41(a)(2). The Court declines to dismiss Counts I and II due to lack of standing and instead **DIRECTS** Plaintiff to file an amended complaint that adds HTC Holding a.s. as an additional plaintiff by no later than **Friday, August 17, 2018**. Plaintiff is not permitted to add any new factual allegations, claims, or causes of action to the amended complaint beyond the minimal additions that will be required in the "Parties" and "Jurisdiction" sections of the pleading.

**IT IS FURTHER ORDERED** that the Ridgeway Defendants' Motion in Limine to Exclude Expert Testimony (Doc. 164) is **GRANTED IN PART** as to the expert testimony of Mr. Dennis Sisson **AND DENIED IN PART** as to the expert testimony and written report of Dr. Steven Kopp. This matter remains set for trial to commence on September 17, 2018.

**IT IS SO ORDERED** on this __14th__ day of August, 2018.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE